UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY O. CALLAHAN,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>G. SWARTHOUT,<br><br>　　　　　　Respondent. | Case No.: 1:11-cv-00455-JLT<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT AND CLOSE FILE<br><br>ORDER DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254/2241. On February 2, 2012, Petitioner filed his written consent to the jurisdiction of the Magistrate Judge for all purposes. (Doc. 20). On April 5, 2011, Respondent filed his written consent to the jurisdiction of the Magistrate Judge for all purposes. (Doc. 10).

**PROCEDURAL HISTORY**

Petitioner is in custody of the California Department of Corrections and Rehabilitation ("CDCR") serving a determinate sentence of 17 years, 4 months pursuant to a judgment of the Superior Court of California, County of Stanislaus (the "Superior Court"). Petitioner was convicted after a jury trial for charges of vehicular manslaughter with gross negligence (Cal. Pen. Code § 192(c)(1)), failing to appear while on bail (Cal. Pen. Code § 1320.5), using methamphetamine (Cal. Health & Safety Code § 11550(a), and falsely identifying himself to a peace officer (Cal. Pen. Code§

148.9. (Clerk's Transcript on Appeal ("CT"), page). Petitioner admitted suffering a prior serious felony conviction that was also a strike and having served a prior prison term. (Id.). Petitioner was sentenced to a determinate term of 17 years, four months. (Id.).

Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed the conviction and judgment on September 23, 2009. (Doc. 12, p. 24 et seq.). Petitioner subsequently filed a petition for review in the California Supreme Court that was denied on December 2, 2009. (Doc. 1, p. 3).

On March 4, 2011, Petitioner filed the instant petition. (Doc. 1). Respondent's answer was filed on May 16, 2011. (Doc. 12). On August 16, 2011, Petitioner filed his Traverse. (Doc. 16). Respondent concedes that the petition is timely and does not contend that any of the claims are unexhausted. (Doc. 12, p. 6).

## **FACTUAL BACKGROUND**

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

Appellant Kelly O. Callahan stands convicted, following a jury trial, of vehicular manslaughter with gross negligence (Pen.Code,1 § 192, subd. (c)(1); count I), failing to appear while on bail (§ 1320.5; count II), using methamphetamine (Health & Saf.Code, § 11550, subd. (a); count III), and falsely identifying himself to a peace officer (§ 148.9; count IV). Following a court trial, an on-bail enhancement (§ 12022.1) was found true with respect to count II. Appellant admitted having suffered a prior serious felony conviction that was also a strike (§ 667, subds.(a), (d)), and having served a prior prison term (§ 667.5, subd. (b)). Sentenced to a total of 17 years 4 months in prison, he now appeals, raising various claims of trial and sentencing error. For the reasons that follow, we will affirm.
…

II
Prosecution Evidence

At approximately 3:49 p.m. on June 24, 2005, Michael Haro, a bus driver, was working with his brother on a truck in front of a residence at the corner of Mercy and Whitmer Court in Modesto. Ralph Absher was doing some yard work on his property on the east side of Mercy.

Haro heard an ice cream truck and a loud vehicle. As he looked down the road, he saw a vehicle heading southbound at a pretty fast speed. The area was a residential neighborhood; Haro believed the speed limit was 25, and he estimated the vehicle to be going 35 to 40 miles per hour. The vehicle swerved to avoid striking the ice cream truck, which was travelling southbound at a slow rate of speed, and it came across the street on the opposite side, traveled some distance after it went around the ice cream truck, and hit Absher. Haro estimated approximately 10 to 15 seconds elapsed between when the vehicle passed the ice cream truck and when it struck Absher. Haro did not believe the brakes were applied before the collision, as he heard a gravel noise when they were applied, and the car kind of slid at that point.

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

Haro called 911, then attempted to render aid. Absher was badly mangled and appeared to be beyond help. Appellant, who was the driver of the vehicle, said something to his passenger, then got out and said, "'Oh my God, oh my God, what did I do, what did I do?'" The vehicle sustained damage from the impact of Absher's body striking it.

Jay McDonald was at Mercy and Finlandia, directly across the street and approximately 18 feet away, when he saw the car go around the ice cream truck. McDonald felt the vehicle was going a bit more than the speed limit, which he believed to be about 25. Absher was using a hoe to weed and was standing off the gravel. The car went into the gravel area and struck him. Absher went up over the top of the car and came down the back. As McDonald was walking across the street, appellant, the driver of the vehicle, said "'What happened?'" McDonald responded, "'You hit him.'"

Modesto Police Officer Nicolai arrived on the scene shortly after 4:00 p.m. He observed clothing in the dirt shoulder area on the east side of the roadway. A burgundy Chevrolet Caprice was parked facing sort of southbound in the northbound lane. It was angled to the west just a bit, and the wheels were slightly canted, as if the driver had made a little bit of a right turn. It had significant damage on the hood and the windshield, and a tiny bit of damage on the roof, just past the top of the windshield. Tire tracks and dirt on the driver's side tires showed that the left side of the car had exited the paved roadway and gone about two feet onto the shoulder. There was approximately 10 feet of shoulder from the east edge of the roadway, then a levee, and then a fence line. The shovel Absher had been using to clean up weeds was found, handle broken, about halfway up the levee. No signs of braking were found. Since the car was equipped with antilock brakes, such signs may not have been visible on the pavement, but would have been visible on the dirt. The car was stopped some 80 to 90 feet from the area of impact.

Appellant was sitting in the back of an ambulance. He related that he had taken his eyes off the road to look at his passenger, who was yelling at him to look out. Appellant told Nicolai that he was going about 35 miles per hour. He said nothing about slowing down at any point. Although Nicolai had been trained in recognizing objective symptoms of methamphetamine use, he did not check appellant's nystagmus or pupils. It is difficult to check demeanor when people have been involved in a collision, and appellant was pretty shaken up and distraught.

Shortly after Nicolai spoke with him, appellant was taken to have his blood drawn, as he had said he had had about half a glass of wine. Toxicology results showed no alcohol in appellant's blood. However, his blood contained 280 nanograms per milliliter of methamphetamine, as well as methamphetamine's major metabolite, amphetamine. The normal range for methamphetamine users is 100 to 300 nanograms per milliliter. The levels suggested methamphetamine had been ingested within 48 hours. The fact the toxicology results showed methamphetamine in appellant's blood and he drove onto the wrong side of the roadway and on the shoulder led Nicolai to believe appellant was impaired.

II

Defense Evidence

Appellant, who had suffered four prior felony convictions, testified that at the time of the incident, he had worked all day and was returning home after running an errand. As he turned onto Mercy, he saw an ice cream truck up the road a bit, and another vehicle coming down the road toward him. Appellant got in line behind the ice cream truck to allow the other vehicle to pass. Once it had, he pulled out from behind the truck. He swung wide to stay away from the truck and the children who were coming out to it from some of the cul-de-sac areas. As he did so, he saw Absher, who was three to four feet off the soft shoulder of the road and into the dirt

3

area, and who appeared to be leaning on a shovel or a hoe.

Appellant gave the ice cream truck a fairly wide berth as he was passing it. His attention was directed to his right, through the passenger's side of the car, toward the sidewalk area of Mercy, where there were children coming out to go to the truck. He heard a noise from his passenger that sounded like an intake of breath, and this caused him to look further to his right, as he believed that to be the area of concern. In fact, his passenger's attention was directed to the left side of the vehicle, and appellant struck Absher. Absher came across the hood and into the windshield. The windshield seemed like it was going to hit appellant, and he jerked the car to the left. As a result, he exited the road onto the dirt, then came back onto the road and came to a stop. He put the car in park and shut off the engine, then went directly toward Absher, who was lying on the dirt. Appellant did not call 911, but other people were starting to show up, and the police then arrived. When appellant saw Absher's condition, he started to collapse emotionally and could not catch his breath. Ambulance attendants gave him oxygen and hooked him up to an EKG.

Appellant estimated his maximum speed while on Mercy at between 25 and 30 miles per hour. He may have told Nicolai that he was going 35 miles per hour. He was not looking at his speedometer. He slowed down prior to pulling next to the ice cream truck. Nothing obscured his view of Absher, whom he glimpsed briefly immediately before the impact. Appellant did not apply his brakes, as there was no time to react. Appellant had the impression that Absher was in mid step or stumbling. He believed Absher had stepped onto the asphalt roadway, within two to three feet of the edge of the road. Appellant was either right at the speed limit or just barely above it.

Appellant last used methamphetamine the Tuesday prior to the Friday on which the collision occurred. A coworker had put some in both their coffees that morning, as they were behind schedule at their job and really needed to get some work done. Appellant was not still feeling the effect of the methamphetamine as he was driving before the collision. He conceded, however, that it would have been safer if he had had no methamphetamine in his system.

Jennifer Heckathorn, a private investigator who previously was a Turlock police officer and, in that capacity, a member of that department's Major Accident Investigation Team for 12 years, obtained her own measurements and data from the scene of the collision, and also reviewed the police reports and photographs in this case. She concluded that the driver's side of appellant's vehicle left the roadway about two feet from the edge of the roadway to the outside of the tire. As she did not have the point of rest of the victim or length of skid marks, she was unable to determine the vehicle's speed. Heckathorn was present when a Ford Explorer went around an ice cream truck. The Explorer, which was narrower than appellant's Caprice, could not go around the truck without going into the oncoming traffic lane, due to the width of the ice cream truck and the roadway itself.

(People v. Callahan, 2009 WL 3020126, *1-3 (Cal. App. Sept. 23, 2009)(unpublished)).

## DISCUSSION

### I.      Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States

Constitution. The challenged conviction arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

## II.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he can show that the state court's adjudication of his claim:

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)  resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-13.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams, 529 U.S. at 405-406. A state court decision involves an "unreasonable application" of clearly established federal law "if the state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable manner." Id., quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)(*per curiam*).

Consequently, a federal court may not grant habeas relief simply because the state court's decision is incorrect or erroneous; the state court's decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams, 529 U.S. at 409). In Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could

disagree" that the state court decision meets the standards set forth in the AEDPA. If fairminded jurists could so disagree, habeas relief is precluded. Richter, 131 S.Ct. at 786. As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an unreasonable application of, clearly established Federal law" is "difficult to meet," because the purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme malfunctions in the state criminal justice systems,'" and not as a means of error correction. Richter, 131 S.Ct. at 786, quoting Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979)(Stevens, J., concurring in judgment). The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Richter, 131 S.Ct. at 787-788. Put another way, a state court's determination that a claim lacks merit bars federal habeas relief so long as "fairminded jurists could disagree" on the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S.Ct. at 1398 ("This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at the same time–i.e., the record before the state court.")

The second prong of federal habeas review involves the "unreasonable determination" clause of 28 U.S.C. § 2254(d)(2). This prong pertains to state court decisions based on factual findings. Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322. Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible, thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment"). A state court's factual finding is

6

unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require that the petitioner demonstrate prejudice. See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984). Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard. Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

**III.  Review of Petitioner's Claims.**

The instant petition itself alleges the following as grounds for relief: (1) insufficient evidence of gross negligence in the vehicular manslaughter charge; and (2) ineffective assistance of trial counsel. To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Thus, here, the Court looks to the opinion issued in the 5th DCA.

I. Insufficient Evidence Of Gross Negligence In The Involuntary Manslaughter Charge.

Petitioner first contends that insufficient evidence was presented on the element of gross negligence of the vehicular manslaughter count. This contention is without merit.

A. The Fifth DCA's Opinion.

The Fifth DCA rejected Petitioner's arguments as follows:

> Appellant contends the evidence is insufficient to sustain his convictions on counts I and III. The test of sufficiency of the evidence is whether, reviewing the whole record in the light most favorable to the judgment below, substantial evidence is disclosed such that a reasonable trier of fact could find the essential elements of the crime beyond a reasonable doubt. (People v.

Johnson (1980) 26 Cal.3d 557, 578; accord, Jackson v. Virginia (1979) 443 U.S. 307, 319.) Substantial evidence is that evidence which is "reasonable, credible, and of solid value." (People v. Johnson, supra, at p. 578.) An appellate court must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (People v. Reilly (1970) 3 Cal.3d 421, 425.) An appellate court must not reweigh the evidence (People v. Culver (1973) 10 Cal.3d 542, 548), reappraise the credibility of the witnesses, or resolve factual conflicts, as these are functions reserved for the trier of fact (In re Frederick G. (1979) 96 Cal.App.3d 353, 367). Furthermore, an appellate court can only reject evidence accepted by the trier of fact when the evidence is inherently improbable and impossible of belief. (People v. Maxwell (1979) 94 Cal.App.3d 562, 577.) "Where the circumstances support the trier of fact's finding of guilt, an appellate court cannot reverse merely because it believes the evidence is reasonably reconciled with the defendant's innocence. [Citations.]" (People v. Meza (1995) 38 Cal.App.4th 1741, 1747.)

A. Count I

As previously stated, appellant was convicted in count I of violating section 192, subdivision (c)(1). He now takes issue with the jury's finding of gross negligence.

Again, "[g]ross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences. [Citation.] 'The state of mind of a person who acts with conscious indifferences [sic ] to the consequences is simply, "I don't care what happens."' [Citation.] The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved. [Citation.]" (Bennett, supra, 54 Cal.3d at p. 1036; People v. Watson, supra, 30 Cal.3d at p. 296.)[2] In determining whether a defendant acted with conscious disregard of the consequences rather than mere inadvertence, a jury is to consider all relevant circumstances, including level of intoxication. (Bennett, at p. 1038.) Moreover, "[i]n determining whether a reasonable person in defendant's position would have been aware of the risks, the jury should be given relevant facts as to what defendant knew, including his actual awareness of those risks. True, ... the defendant's lack of such awareness would not preclude a finding of gross negligence if a reasonable person would have been so aware. But the converse proposition does not logically follow, for if the evidence showed that defendant actually appreciated the risks involved in a given enterprise, and nonetheless proceeded with it, a finding of gross negligence (as opposed to simple negligence) would be appropriate whether or not a reasonable person in defendant's position would have recognized the risk." (People v. Ochoa, supra, 6 Cal.4th at p. 1205.)

In the present case, a rational trier of fact could have concluded from the evidence, together with inferences reasonably drawn therefrom, that at the time of the collision, appellant was driving in a residential area, on a fairly narrow street. Although he was aware that children might be present, he drove faster than was safe for conditions. There was a significant amount of methamphetamine in his system; he had previously used the drug, was aware of at least some of its effects, and admitted it would have been safer had he had no methamphetamine in his system.  Appellant saw Absher, who was several feet off the side of the road, prior to the

---

[2] People v. Watson, 30 Cal. 3d 290 (1981).

8

> collision. Although appellant professed concern for children coming out to the ice cream truck, instead of waiting behind the truck or passing it very slowly, he passed it in such a manner that he ran at least partway off the road and struck Absher with enough force to mangle his body. Under the circumstances, jurors reasonably could have concluded appellant's conduct did not disclose mere inadvertence, but instead showed a conscious indifference to consequences such that he was grossly negligent. (See People v. Costa (1953) 40 Cal.2d 160, 166.)

(People v. Callahan, supra, *12-13).

### B. Federal Law On Insufficiency Of The Evidence.

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows: "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'" See id., *quoting* Jackson, 443 U.S. at 319. Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, Jackson does not permit a federal court to revisit credibility determinations. See id. at 957-958.

1   Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). However, mere suspicion and speculation cannot support logical inferences. Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-79 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of aiding and abetting).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H., 408 F.3d at 1274. Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275.[3] Moreover, in applying the AEDPA's deferential standard of review, this Court must also presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption. Sumner v. Mata, 455 U.S. 539, 597, 102 S.Ct. 1198 (1981).

In Cavazos, v. Smith, __U.S. __, 132 S.Ct. 2 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." Renico v. Lett, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).
>
> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

---

[3] Prior to Juan H., the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims. See Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004); Garcia v. Carey, 395 F.3d 1099, 1102 (9th Cir. 2005).

Cavazos, 132 S.Ct. at 3.

> "Jackson says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' 443 U.S., at 319, 99 S.Ct. 2781. It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id., at 326, 99 S.Ct. 2781.

Cavazos, 132 S.Ct. at 6.

Here, the 5th DCA applied the correct standard, i.e. Jackson, and therefore the only issue is whether the state court's application of the Jackson standard was objectively unreasonable. For the following reasons, the Court concludes that it was not.

### C. Analysis.

To the extent Petitioner is challenging the state court's definition of the term "gross negligence," such an argument is both misguided and unavailing. The state court defined gross negligence as "the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences." Petitioner appears to argue in his Petition for Review that, in addition, it must be proved that his conduct was "inherently exceptional." (Doc. 1, Petition for Review, p. 9). Petitioner contends that exceptional behavior in driving is required and that, by contrast, Petitioner's "outward driving conduct was entirely unexceptional." (Id.).

Petitioner's contention notwithstanding, the 5th DCA's definition of gross negligence contains no such requirement that the conduct be "exceptional." To the contrary, the prosecution needed only to prove fatal conduct in combination with a mental state equivalent to, as the 5th DCA explained, "I don't care what happens." As noted above, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989); Horton v. Mayle, 408 F.3d 570, 576 (9th Cir. 2005)(State's construction of its own law is binding on federal court). Considering that neither the 5th DCA nor the California Supreme Court agreed with Petitioner's construction of the term "gross negligence" as encompassing the additional element of "exceptional," this Court is in no position to advance a definition that markedly diverges from the state courts' interpretation of their own laws.

To the extent Petitioner is arguing that, under the appropriate state definition of "gross negligence," his conduct did not meet that standard, he is again mistaken. Essentially, the 5th DCA noted that Petitioner: drove faster than conditions would allow on a narrow, residential street where children might be present; drove while having consumed a significant amount of methamphetamines that were still in his system; chose to pass a slow-moving ice cream truck even though Petitioner saw pedestrians standing on the side of the road nearby; in passing the ice cream truck, Petitioner had to veer onto the shoulder of the street where he knew pedestrians were standing; and Petitioner struck the victim with enough force to mangle his body. Moreover, the state court noted Petitioner's prior history of drug abuse would have made him aware of the drug's inevitable tendency to impair his driving ability, such that using the drug on this occasion, under the circumstances outlined above, constituted sufficient evidence from which a reasonable juror could have found that Petitioner acted with gross negligence.

The Court's task here is simply to determine whether such a conclusion, based on the stated evidence and inferences to be drawn therefrom, is an objectively unreasonable application of the Jackson standard. For the reasons outlined by the 5th DCA, it was not.

II. Ineffective Assistance Of Trial Counsel.

Next, Petitioner contends that his trial counsel was ineffective for failing to object to an expert witness's qualifications and her testimony regarding the effects of methamphetamine on driving. Again, the contention lacks merits.

A. The 5th DCA's Opinion.

After rejecting numerous evidentiary claims Petitioner raised regarding the admission of the expert's testimony, the 5th DCA rejected Petitioner's contention as follows:

> Appellant thus is relegated to arguing that his trial attorney was ineffective for failing to object on the various grounds appellant now wants to raise on appeal. The burden of proving ineffective assistance of counsel is on the defendant. (People v. Pope (1979) 23 Cal.3d 412, 425.) "To secure reversal of a conviction upon the ground of ineffective assistance of counsel under either the state or federal Constitution, a defendant must establish (1) that defense counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that there is a reasonable probability that defendant would have obtained a more favorable result absent counsel's shortcomings. [Citations.] 'A reasonable probability is a probability

sufficient to undermine confidence in the outcome.' [Citation.]" (People v. Cunningham (2001) 25 Cal.4th 926, 1003; see generally Strickland v. Washington (1984) 466 U.S. 668, 687-694.)

"A claim of ineffective assistance of counsel based on a trial attorney's failure to make a motion or objection must demonstrate not only the absence of a tactical reason for the omission [citation], but also that the motion or objection would have been meritorious, if the defendant is to bear his burden of demonstrating that it is reasonably probable that absent the omission a determination more favorable to defendant would have resulted. [Citations.]" (People v. Mattson (1990) 50 Cal.3d 826, 876.) "Defendant has the burden of establishing, based on the record on appeal [citations] and on the basis of facts, not speculation [citation], that trial counsel rendered ineffective assistance. [Citation.]" (Id. at pp. 876-877.) " 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."' [Citations.]" (People v. Weaver (2001) 26 Cal.4th 876, 925.) Whether to object to arguably inadmissible evidence or to allege prosecutorial misconduct are inherently tactical decisions; hence, failure to object rarely establishes counsel's incompetence. (People v. Maury (2003) 30 Cal.4th 342, 415-416, 419.) "In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions. [Citations.]" (People v. Weaver, supra, 26 Cal.4th at p. 926.)

On the record before us, we are unable to conclude that there could be no satisfactory explanation for trial counsel's various failures to object. (See People v. Bell (1989) 49 Cal.3d 502, 546.) As we have explained, *ante*, evidence of appellant's recent methamphetamine use was relevant because it had some tendency in reason to prove appellant acted with gross negligence (see People v. Freeman (1994) 8 Cal.4th 450, 491; People v. Garceau, supra, 6 Cal.4th at p. 177); hence, it could properly be considered by the jury in determining that question even though no offense alleging actual driving impairment was charged. Accordingly, any objection to the prosecutor's proceeding on such a theory, or to admission of evidence in support of such a theory, would have been unavailing. Trial counsel cannot be faulted for failing to make unmeritorious objections. (See People v. Mattson, supra, 50 Cal.3d at p. 876.) Similarly, since Enkema's testimony was admissible with respect to count I as well as count III, counsel reasonably could have concluded it was not unduly confusing and prejudicial and so did not warrant objection under Evidence Code section 352.

The record on appeal also fails to show that trial counsel lacked a reasonable tactical basis for declining to challenge Enkema's qualifications or competence to testify as an expert concerning the subject matter of her testimony. (See People v. Hart (1999) 20 Cal.4th 546, 630.) "A person is qualified to testify as an expert if [she] has special knowledge, skill, experience, training, or education sufficient to qualify [her] as an expert on the subject to which [her] testimony relates." (Evid.Code, § 720, subd. (a).) Such knowledge, skill, experience, training, or education may be shown by the witness's own testimony. (Id., subd. (b).) "The essential questions which must be favorably answered to qualify a witness as an expert are two: Does the witness have the background to absorb and evaluate information on the subject? Does [she] have access to reliable sources of information about the subject? Two aspects of the witness's history are thus involved: the first, a subjective aspect, the capacity of

the witness to understand and report; the second, an objective aspect, the witness's access and exposure to relevant data on the subject matter on which [her] opinion is sought. [Citation.]" (Los Altos El Granada Investors v. City of Capitola (2006) 139 Cal.App.4th 629, 658.) "The trial court's determination of whether a witness qualifies as an expert is a matter of discretion and will not be disturbed absent a showing of manifest abuse. [Citation.] ' "Where a witness has disclosed sufficient knowledge of the subject to entitle [her] opinion to go to the jury, the question of the degree of [her] knowledge goes more to the weight of the evidence than its admissibility."' [Citation .]" (People v. Bolin (1998) 18 Cal.4th 297, 321-322.)

Because appellant did not challenge Enkema's qualifications as an expert, we cannot tell whether the record is complete on that issue. (See People v. Gonzalez (2006) 38 Cal.4th 932, 948.) "'Error regarding a witness's qualifications as an expert will be found only if the evidence shows that the witness ""clearly lacks qualification as an expert."'" [Citations.]" (People v. Panah, supra, 35 Cal.4th at p. 478.) On the information before us, we cannot say the trial court would have manifestly abused its discretion by permitting Enkema to testify as an expert over objection. (See, e.g., People v. Wallace (2008) 44 Cal.4th 1032, 1062-1063; People v. Bolin, supra, 18 Cal.4th at p. 322; People v. Clark (1993) 5 Cal.4th 950, 1018-1019, disapproved on other grounds in People v. Doolin (2009) 45 Cal.4th 390, 421, fn. 22.) It follows that defense counsel's decision to refrain from so objecting was not one for which there could be no satisfactory explanation. (See People v. Hart, supra, 20 Cal.4th at p. 630.)

Nor do we agree with appellant that, by testifying it was not prudent for appellant to drive after ingesting methamphetamine, Enkema proffered unqualified testimony on the ultimate issue of the case. "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid.Code, § 805.) "Nevertheless, an expert opinion is inadmissible 'if it invades the province of the jury to decide a case.' [Citation.] Such evidence is 'wholly without value' to the trier of fact. [Citation.] The determination whether an expert witness's opinion bears upon or decides an ultimate issue in the case is sometimes a difficult decision, and 'a large element of judicial discretion [is] involved.' [Citation.]" (People v. Frederick (2006) 142 Cal.App.4th 400, 412.)

In the present case, Enkema testified generally, and not specifically about appellant's driving. Moreover, she did not testify that appellant acted with gross negligence, or that driving with methamphetamine in one's system reached such a level of lack of care. She simply opined that it would not be prudent to drive with methamphetamine in one's system, and then explained why. We see no real difference between such testimony and, for example, the permissible opinion of an expert on the illegal distribution of pharmaceuticals that certain drugs were possessed for the purpose of illegal street sales. (See People v. Doss (1992) 4 Cal.App.4th 1585, 1596.) This was not a situation in which the expert's opinion amounted to nothing more than an expression of her belief as to how the case should be decided, thereby supplanting, rather than merely aiding, the jurors. (See Summers v. A.L. Gilbert Co. (1999) 69 Cal.App.4th 1155, 1183.)

With respect to defense counsel's failure to object to alleged prosecutorial misconduct, for the most part the prosecutor's argument was unobjectionable because, contrary to appellant's assertion, the trial court did not err by admitting Enkema's testimony and so there was no error for the prosecutor to "exploit." The prosecutor did not commit misconduct by arguing to the

14

>jury that appellant's methamphetamine use was a factor to be considered in determining whether he acted with gross negligence. Even assuming the prosecutor stepped over the line by inviting the jury to speculate, we cannot say defense counsel acted unreasonably by choosing to counter argument that appellant was high with argument of his own. (See People v. Morales (1992) 5 Cal.App.4th 917, 929.) Moreover, it is not reasonably probable a result more favorable to appellant would have been reached had defense counsel successfully objected to this portion of the argument. The prosecutor expressly told jurors he could not prove how much the methamphetamine was affecting appellant or that appellant was under the influence for driving purposes. He also argued that gross negligence existed even if the methamphetamine was factored out.

(People v. Callahan, supra, *9-12).

### B. Federal Law On Ineffective Assistance Of Counsel.

Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of appellate counsel are reviewed according to Strickland 's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that appellate counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the appeal. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. 1411, 1419 (2009). Accordingly, the question "is not whether a

federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. at 1420. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

Here, the state court identified the appropriate federal standard by applying Strickland. Thus, the only issue is whether the state court's adjudication, i.e., that defense counsel's representation was neither deficient nor prejudicial, was not contrary to or an unreasonable application of Strickland. For the reasons discussed below, the Court concludes that it was not.

C. Analysis.

Initially, Petitioner has failed to show how counsel's conduct was deficient. Petitioner contends trial counsel was made aware of the potential for expert testimony about Petitioner's methamphetamine use while driving during voir dire. (Doc. 1, Pet. for Review, p. 13). Counsel objected that since Petitioner was not charged with driving under the influence of drugs, such testimony was inappropriate. (Id.). After some discussion, the trial court indicated that, if the prosecution wished to present evidence concerning the effect of methamphetamine consumption on Petitioner's driving ability, expert testimony would be required. (Id. at p. 14). At trial, the prosecution presented the expert testimony of Nancy Enkema, who, as mentioned above, testified that methamphetamine consumption "could" have "some" effect on a person's driving and "can" cause talkativeness and hyper-vigilance or make them unreactive to light. (Id.). Enkema also opined that methamphetamine users take more risks while under the effects of the drug and perhaps even drive faster than they normally would. (Id. at p. 15). Petitioner argues that counsel's failure to object to any of this testimony, either in limine or at trial, waived Petitioner's right to challenge the admission of Enkema's testimony on direct appeal and, in

light of the prejudicial effect of the testimony, constituted ineffective assistance of counsel.  (Id.).

As the 5th DCA's opinion points out, however, even if counsel's in limine conversation with the trial judge could be considered a motion to exclude the expert testimony, it would only have been to exclude expert opinion regarding whether Petitioner was impaired, not whether drug consumption contributed to a finding of gross negligence.  The appellate court used this distinction to justify trial counsel's failure to lodge an objection, since, in the state court's view, "evidence of [Petitioner's] recent methamphetamine use was relevant because it had some tendency in reason to prove [Petitioner] acted with gross negligence." People v. Callahan, supra, *9-10).  In other words, under state law, the proffered evidence was relevant and admissible for the purpose of establishing gross negligence.[4]  Since any objection to such admissible evidence would have been futile, counsel's failure to make such an objection cannot be considered deficient representation.  Such reasoning also disposes of Petitioner's other contention, i.e., that by failing to object counsel failed to preserve the issue on appeal, since, as the 5th DCA indicated, that issue would have been rejected on appeal since the evidence was admissible under California law on the issue of gross negligence.

Nor has Petitioner established that counsel's conduct, even if deficient, he was prejudiced by counsel's conduct.  The expert, Nancy Enkima, testified only that methamphetamine "could" have "some" effect on a person's driving, and she admitted on cross-examination that she could not state that the drug had caused the collision with the victim. (Reporter's Transcript ("RT") 136; 139).  As the 5th DCA pointed out, she also did not offer any expert opinion about whether Petitioner's conduct constituted gross negligence, or whether consuming the amount of methamphetamine that Petitioner consumed on that occasion would, by itself, constitute gross negligence.  Against the backdrop of this expert opinion testimony, Petitioner himself conceded that it would have been safer had he not had the drug in his system.  Finally, the prosecution admitted during trial that it could not establish the exact amount of methamphetamine Petitioner had in his system nor could it establish with certainty the effects of the drug on Petitioner's ability to drive, and went on to insist that Petitioner's conduct

---

[4] The 5th DCA also pointed out an additional strategic reason for trial counsel's failure to object, i.e., because the expert witness evidence was clearly admissible as to Count III, using methamphetamine, it could have been confusing to the jurors to allow the testimony for one charge but exclude it for the other. People v. Callahan, supra, at *10.

amounted to gross negligence even if the evidence of drug use were disregarded. Given this combination of circumstances, it is difficult to see how trial counsel's failure to object to the admission of Enkema's testimony was prejudicial, or, put another way, how a timely objection to her testimony, even if sustained, would, more likely than not, have resulted in a different outcome for Petitioner.

Accordingly, the Court concludes that counsel was not ineffective under Strickland and its progeny. Therefore, having rejected both of Petitioner's claims for relief, the petition will be denied with prejudice.

Moreover, the Court declines to issue a certificate of appealability. A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denied a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were 'adequate to deserve encouragement to proceed further'." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (*quoting* Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Thus, the Court DECLINES to issue a certificate of appealability.

### **ORDER**

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1. The petition for writ of habeas corpus (Doc. 1), is DENIED with prejudice;
2. The Clerk of the Court is DIRECTED to enter judgment and close the file;
3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **October 11, 2013**                    **/s/ Jennifer L. Thurston**
                                                                   UNITED STATES MAGISTRATE JUDGE